IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
AT KANSAS CITY

| | |
|---|---|
| TAMERA SWEETON, on behalf of herself and others similarly situated,<br><br>And<br><br>JASON MOSS, on behalf of himself and all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>WEBMD, LLC<br><br>      Defendant. | Case No. 4:23-cv-00094-BCW<br><br><u>JURY TRIAL DEMANDED</u> |

## **SUGGESTIONS IN OPPOSITION TO MOTION TO DISMISS**

BARTLE & MARCUS LLC
David L. Marcus, MO Bar #47846
BARTLE & MARCUS LLC
4700 Belleview Ave., Suite 200
Kansas City, MO 64112
Telephone: 816.256.4699
Fax: 816.222.0534
Dmarcus@bmlawkc.com

WHITE, GRAHAM, BUCKLEY & CARR, L.L.C.
Bryan T. White, MO Bar #58805
19049 East Valley View Parkway
Independence, MO 64055
Telephone: 816.373.9080
Fax: 816.373.9319
bwhite@wagblaw.com

CLAYTON JONES, ATTORNEY AT LAW
Clayton Jones, MO Bar #51802
405 Foxwood Drive
Raymore, MO 64083
Telephone: 816.318.4266
Fax: 816.318.4267
clayton@claytonjoneslaw.com

*Attorneys for Plaintiffs Tamera Sweeton and Jason Moss*

# TABLE OF CONTENTS

I. Factual Background ................................................................................................ 1

II. Argument ................................................................................................................ 4

    A. The First Amendment Does Not Require Dismissal of Plaintiff's Claims ........................................................................................... 4

        1. The First Amendment Does Not Protect Defendant's Product Advertisements from Challenge Because They Constitute Commercial Speech ............................................................................. 5

        2. The First Amendment Does Not Protect the Enhanced Profiles from Challenge Because They Constitute Commercial Speech ............................................................................. 7

    B. Dr. Sweeton's Claims Are Not Barred by Kansas' Two-Year Statute of Limitations ................................................................................. 11

    C. Dr. Sweeton States An Invasion of Privacy Claim Under Kansas Law .......................................................................................................... 12

    D. Kansas Recognizes a Right of Publicity Tort ................................................ 13

    E. Dr. Moss States a Claim for Invasion of Privacy Under Missouri Law ............................................................................................................... 14

    F. Dr. Moss States a Right of Publicity Claim Under Missouri Law ................ 15

Certificate of Service ............................................................................................................ 16

# **TABLE OF AUTHORITIES**

*Ariix, LLC v. NutriSearch Corp.,*
　　985 F.3d 1116 (9th Cir. 2021) .................................................................. 5, 7, 8

*Assessment Technologies Institute LLC v. Parkes,*
　　588 F.Supp.3d 1178 (D. Kan. 2022) ........................................................... 13

*Batis v. Dun & Bradstreet Holdings, Inc.,*
　　Case No. 22-cv-01924-MMC,
　　2023 WL 1870057 (N.D. Cal. Feb. 9, 2023) ............................................... 13

*Bd. of Trs. Of State Univ. of N.Y. v. Fox,*
　　492 U.S. 469 (1989) ................................................................................ 6, 8, 11

*Bishop v. DeLaval, Inc.,*
　　466 F.Supp.3d 1016 (W.D.Mo. 2020) ......................................................... 12

*Bolger v. Youngs Drug Products Corp.,*
　　463 U.S. 60 (1983) ............................................................................... 4, 5, 6, 8

*Boshears v. PeopleConnect, Inc.,*
　　Case No. C21-1222 MJP,
　　2022 WL 888300 (W.D. Was. Mar. 25, 2022) ........................................ 9, 10

*Browne v. Avvo, Inc.,*
　　525 F.Supp.2d 1249 (W.D. Wash. 2007) .................................................... 11

*Camacho v. Control Group Media Co., LLC,*
　　Case No. 21-cv-1954-MMA,
　　2022 WL 3093306 (S.D.Cal. July 18, 2022) ................................................. 9

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York,*
　　447 U.S. 557 (1980) ......................................................................................... 4

*Daniels v. FanDuel, Inc.,*
　　Case No. 1:16-cv-01230-TWP-DKL,
　　2017 WL 4340329 (S.D. Ind. Sept. 29, 2017) ............................................. 11

*Dearborn Animal Clinic, P.A. v. Wilson,*
　　248 Kan. 257 (1991) ...................................................................................... 12

*Doe v. TCI Cablevision,*
　　110 S.W.3d 363 (Mo. Banc. 2003) ................................................... 13, 14, 15

*Dry v. Boeing Co.*,
	No. 99-1402-WEB, 2002 WL 31730924 (D. Kan. Sept. 3, 2002) ............ 12, 13

*First Resort, Inc. v. Herrera*,
	860 F.3d 1263 (9th Cir. 2017) ............ 5

*Hunt v. City of Los Angeles*,
	638 F.3d 703 (9th Cir. 2011) ............ 5

*Jordan v. Jewel Food Stores, Inc.*,
	K743 F.3d 509 (7th Cir. 2014) ............ 4, 5, 7, 8

*Krause v. RocketReach LLC*,
	561 F.Supp.3d 778 (N.D. Ill. 2021) ............ 10

*Nemani v. St. Louis University*,
	33 S.W.3d 184 (Mo. Banc. 2000) ............ 14

*Progressive Prods., Inc. v. Swartz*,
	292 Kan. 947 (Kan. 2011) ............ 13

*Siegel v. Zoominfo Technologies, LLC*,
	21 C 2032, 2021 WL 4306148 (N.D. Ill. Sept. 22, 2021) ............ 11

*Thornton v. Western & Southern Financial Group Beneflex Plan*,
	797 F.Supp.2d 796 (W.D. Kentucky 2011) ............ 13

*United States v. United Foods, Inc.*,
	533 U.S. 405 (2001) ............ 4

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
	425 U.S. 748 (1976) ............ 4

*Vdolyak v. Avvo, Inc.*,
	206 F.Supp.3d 1384 (N.D. Ill. 2016) ............ 10, 11

Restatement (Second) of Torts § 652C ............ 13

Restatement (Third) of Unfair Competition § 1 ............ 13, 14

Restatement (Third) of Unfair Competition § 46 ............ 14, 15

United States Constitution, Amendment 1 ............ 4

# I. FACTUAL BACKGROUND

This is a lawsuit for invasion of privacy and violation of the right of publicity. Defendant is the New York-based owner and operator of a website known as doctor.webmd.com. *First Amended Complaint* ("FAC"), ¶¶ 4, 8. The doctor.webmd.com website lists healthcare providers' names, locations, and other basic information about their practices. FAC, ¶¶ 9, 10, 16, 17, 39. Defendant invites providers to "claim" their profiles for free or to pay for an "Enhanced Profile." FAC, ¶ 17. Defendant tells providers that by paying for an Enhanced Profile, "[n]o competitors or advertisements will ever be placed on your Enhanced Profile[]" and "you will get additional exposure from having your profile show up on competitor pages." FAC, ¶ 19. This last point is pivotal to Defendant's business model.

Defendant uses provider information in free profiles as bait to steer website visitors to the paid Enhanced Profiles. FAC, ¶ 20. People who search for a provider on Google or a comparable search engine are shown links to providers' profiles on Defendant's website. FAC, ¶ 21. Clicking on a link will cause the provider's profile to be displayed, but along with that profile, links to Enhanced Profiles also will be displayed beneath a heading, "Featured Providers Near You." FAC, ¶¶ 21, 23.[1] These links to Enhanced Profiles do not appear at random. FAC, ¶ 24. Rather, they are profiles of providers who compete directly with providers like Plaintiffs who only have a standard listing. *Id.* The Enhanced Profiles are thus targeted to the "standard" provider profile and to that "standard" provider's potential patients. *Id.*

---

[1] Plaintiffs dispute that Defendant's Exhibit B contains "[t]rue and correct copies of both Plaintiffs' profiles on doctor.webmd.com…" (Def's Sugg. in Supp, p.3, fn.3), because the exhibit omits the Enhanced Profiles and other advertisements. Attached hereto as Exhibit 1 are true and correct copies of screenshots of both Plaintiffs' profiles on Defendant's doctor.webmd.com website on May 22, 2023, captured using a Google Chrome Web browser. *See* https://doctor.webmd.com/doctor/tamera-sweeton-8ae3ac65-9dd0-4bd9-8460-d67281ade399-overview https://doctor.webmd.com/doctor/jason-moss-443fd8e2-5c78-4d1d-8a65-f3d605d2b674-overview. Each reflects the Enhanced Provider links and advertisements as alleged in the First Amended Complaint.

Links to these Enhanced Profiles, as well as the Enhanced Profiles themselves, are advertisements, proposing that the website visitor engage in a commercial transaction with the specific person whose name is listed. FAC, ¶ 25. Indeed, merely by clicking the link for an Enhanced Profile, a website visitor engages in a commercial transaction because Defendant is compensated on a per-click basis by individuals and entities who choose to advertise on doctor.webmd.com. FAC, ¶ 26. Once a visitor is on the webpage for an Enhanced Profile, competing provider advertisements, including any standard provider profile the visitor originally sought, are gone and not viewable. FAC, ¶ 27.

In addition to marketing its website to healthcare providers, Defendant also markets its website to companies in the health and wellness space. FAC, ¶ 29. Defendant tells these companies they will have a "competitive blunting opportunity" by "target[ing] your messaging to specialists who are high prescribers of competitive treatments." FAC, ¶ 30. When a website visitor searches for a provider who only has a standard profile, the visitor is directed to both the standard profile and, directly adjacent to it, an advertisement for a health and wellness product generally related to that provider's practice area. FAC, ¶ 31. These advertisements do not appear at random. They are targeted to providers who, because of their practice areas, are likely to attract patients that might utilize the particular health and wellness products being advertised. FAC, ¶ 32.

Defendant does not obtain standard providers' permission to use their names and likenesses to drive traffic to Enhanced Profiles and advertisements, nor does Defendant compensate providers for such use. FAC, ¶ 36, Unlike familiar phone directories and the "yellow pages," Defendant's business model and platform is not designed to list provider information in alphabetical order next to paid advertisements containing subject matter the viewers of the directory may or may not be motivated to read or search for. FAC, ¶ 37. Instead, Defendant populates the webpage containing

2

Case 4:23-cv-00094-BCW   Document 26   Filed 05/23/23   Page 6 of 20

the "searched for" provider's profile with specifically selected and "enhanced" names/profiles of providers in the same practice area who have paid Defendant to highlight and draw attention to those profiles on the directory pages of other, non-paying providers like Plaintiffs. *Id.*

Plaintiffs do not challenge the mere inclusion of their names and their practice information on the doctor.webmd.com website. FAC, ¶ 58. Instead, Plaintiffs challenge the specific use of their names and likenesses to steer website visitors to specifically selected Enhanced Profiles and product advertisements. *Id.* Plaintiffs sue Defendant under the common law theories of invasion of privacy (name appropriation) and right of publicity.

Defendant seeks dismissal of Plaintiffs' claims on a variety of grounds, including the purported preclusive effect of the First Amendment, the purported application of the Kansas statute of limitations, and purported defects in the manner Plaintiffs pleaded their claims. Each of Defendant's arguments is wholly without merit. In particular:

- ***Defendant's First Amendment argument is without merit.*** The First Amendment provides only limited protection to commercial speech and therefore does not insulate Defendant's targeted advertising from challenge.

- ***Defendant's statute of limitations argument is without merit.*** Even assuming the Kansas statute of limitations applies, it only impacts the proposed class definition and does not support dismissal of Dr. Sweeton's claims.

- ***Defendant's argument that Plaintiffs did not properly plead their invasion of privacy claim is without merit.*** Dr. Sweeton properly pleaded that Defendant used her name as bait to attract visitors to its website and steer them to competing healthcare providers and to advertisements for healthcare products. Dr. Moss properly pleaded that his name was used as symbol of his identity.

3

- ***Defendant's argument that Kansas does not recognize the right of publicity is without merit.*** Kansas recognizes a cause of action for right of publicity, which falls beneath the broad umbrella of unfair competition.

- ***Defendant's argument that Dr. Moss did not properly plead a cause of action for right of publicity is without merit.*** Dr. Moss properly pleaded that Defendant misappropriated his public persona as a licensed chiropractor.

For these reasons, and as set forth below, Defendant's motion should be denied in its entirety.

## II. ARGUMENT

### A. The First Amendment Does Not Require Dismissal of Plaintiffs' Claims

The First Amendment provides in part that "Congress shall make no law … abridging the freedom of speech." U.S. Const. amend. I. This provision generally protects speech from unwarranted government regulation. *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 761-62 (1976). However, "[d]ifferent types of speech are afforded different levels of protection. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 561-63 (1980). Commercial speech is provided lesser protection than other constitutionally guaranteed speech. *Id.* at 562-63. Commercial speech ordinarily is "defined as speech that does no more than propose a commercial transaction," but the boundaries of commercial speech are not marked exclusively by this "core" definition. *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001); *Jordan v Jewel Food Stores, Inc.*, 743 F.3d 509, 516 (7th Cir. 2014). Instead, courts try to give effect to the "'common-sense distinction' between commercial speech and other varieties of speech." *Jordan*, 743 F.3d at 516.

In *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60 (1983), the Supreme Court articulated the following guideposts for courts to consider in determining whether speech is

commercial: (1) whether the speech is an advertisement; (2) whether the speech refers to a specific product; and (3) whether the speaker has an economic motivation for the speech. *Id.* at 66-67; *see also Hunt v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011) (reciting the *Bolger* guideposts); *Jordan*, 743 F.3d at 517 (same). "This is just a general framework, however; no one factor is sufficient, and *Bolger* strongly implied that all are not necessary." *Jordan*, 743 F.3d at 517 (citing *Bolger*, 463 U.S. at 67 n. 14).

The Supreme Court has made clear that "advertising which 'links a product to a current public debate' is not thereby entitled to the constitutional protection afforded noncommercial speech." *Bolger*, 463 U.S. at 67-68. At the same time, speech that is determined to be commercial can lose its commercial character if it is "inextricably intertwined" with fully protected speech. *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1116, 1119 (9th Cir. 2021). "[C]ommercial speech analysis is fact-driven, due to the inherent difficulty of drawing bright lines that will clearly cabin commercial speech in a distinct category." *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1272 (9th Cir. 2017)(internal quotation marks omitted).

### 1. The First Amendment Does Not Protect Defendant's Product Advertisements from Challenge Because They Constitute Commercial Speech

As alleged in the First Amended Complaint, when a website visitor searches for a provider who only has a standard profile, the visitor is directed to a page that contains both the standard profile and, directly adjacent to it, an advertisement for a health and wellness product related to that provider's practice area. FAC, ¶ 31. These advertisements are targeted to providers who, because of the areas in which they practice, are likely to attract patients that might utilize the particular health and wellness products being advertised. FAC, ¶ 32. Defendant's website is not a directory of public information that contains advertisements; Defendant uses Plaintiffs' and other

5

provider's names with the intent to intercept visitors searching for those providers and move them to specifically selected Enhanced Profiles or providers who pay Defendant for that service.

Defendant mischaracterizes the content of "standard" profiles, and appears to have selected incomplete Plaintiff profiles as Exhibit 2 to its Motion. Defendant argues this case should be dismissed because "the only link [on Plaintiffs' profiles] is to a free 'Claim your profile' option." That representation is contrary to the First Amended Complaint's allegations and is different than what actually appears on Defendant's website. *See* Ex. 1. Unlike Defendant's Exhibit B, the webpages in Plaintiffs' Exhibit 1 reflect links to "Featured Providers," "View More Providers," "similar providers" and paid advertisement banners, none of which are acknowledged or analyzed by Defendant. Exhibit 1 goes well beyond "the only link" being to a free "Claim Your Profile" link. Defendant's reliance on inaccurate facts is reason enough to deny its motion.

On the law, the *Bolger* analysis for these advertisements is straightforward. They are traditional advertisements for specific products, and Defendant is economically motivated to run the advertisements because it receives a payment anytime a website visitor clicks on them. These advertisements clearly constitute commercial speech. The fact that the advertisements are adjacent to standard profiles—arguably non-commercial speech—does not cause the advertisements to lose their commercial character. The test is whether commercial speech is "inextricably intertwined" with non-commercial speech. If so, the First Amendment will fully protect both the commercial and non-commercial speech. If not, the commercial speech will receive only limited protection. Stated another way, if "[n]o law of man or of nature makes it impossible" to present the noncommercial aspects of the speech without the commercial aspects, then the noncommercial speech is not inextricably intertwined with the commercial speech. *Bd. of Trs. Of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 474-75 (1989).

These advertisements are not intertwined with the standard profiles that appear on the same page. Rather, they are separate and distinct and easily severable from the standard profiles. FAC, ¶¶ 34, 35. Indeed, this is proven by Defendant's actions and business model. When a healthcare provider pays for an Enhanced Profile, Defendant removes the advertising content. For standard profiles, advertisements appear next to his or her name and contact information. This demonstrates the severability of the advertisements.

The case of *Ariix*, *supra*, is illustrative. In *Arrix*, the manufacturer of nutritional supplements brought a false advertising claim under the Lanham Act against the publisher of a guide that rated and reviewed nutritional supplements. The defendant successfully moved to dismiss plaintiff's claims based in part on the argument that plaintiff failed to plausibly allege defendant's guide constituted commercial speech. On appeal, the Ninth Circuit reversed. It held that plaintiff plausibly alleged defendant published the guide to reap the benefits of a hidden marketing arrangement with a large supplement manufacturer whose products were featured. The court acknowledged the guide contained non-commercial aspects but concluded the commercial parts of the guide were "easily separable" and observed that "[n]othing prevents NutriSearch from publishing the informational section as a separate publication from its ratings." *Ariix*, 985 F.3d at 1119-20; *see also Jordan*, 743 F.3d at 521 ("[S]imply combining commercial and noncommercial elements in a single presentation does not transform the whole into noncommercial speech.").

Defendant's product advertisements are commercial speech. They are entitled to only limited First Amendment protection. They are not insulated from Plaintiff's claims in this case.

2. **The First Amendment Does Not Protect the Enhanced Profiles from Challenge Because They Constitute Commercial Speech**

As alleged in the First Amended Complaint, when a website visitor searches for a healthcare provider who has a standard profile, the visitor is directed to a page that contains both

7

the standard profile and, directly beneath it, the heading "Featured Providers Near You." FAC, ¶ 23. Beneath the heading "Featured Providers Near You" are links to Enhanced Profiles. *Id.* Defendant thus uses healthcare providers whose names appear in standard profiles as bait to steer website visitors to providers who have paid for an Enhanced Profile. FAC, ¶ 20.

These Enhanced Profiles constitute commercial speech under *Bolger*. They promote patronage of the specific providers they feature, and therefore qualify as advertisements. *See Jordan*, 743 F.3d at 520 (finding that a congratulatory message that promoted patronage of a business was an advertisement under *Bolger*); *see also Ariix*, 985 F.3d at 1116 (an advertisement under *Bolger* can encompass even a subtle marketing campaign such as posts by social media influencers). Defendant is economically motivated to run the advertisements because it receives a payment anytime a website visitor clicks on them and/or receives a fee simply for running them. This is similar to the situation in *Ariix*, where the defendant was receiving compensation from a manufacturer of nutritional supplements that were listed in its guide. *See Ariix*, 985 F.3d at 1117.

The fact that the Enhanced Profiles appear beneath standard directory profiles does not entitle the Enhanced Profiles to enhanced First Amendment protection. These Enhanced Profiles are not intertwined with the standard profiles that appear on the same page. Rather, they are separate and distinct and easily severable from the standard profiles. FAC, ¶¶ 34, 35. This is demonstrated by the fact that if a healthcare provider pays for an Enhanced Profile, competitors' profiles do not appear anywhere on the page. FAC, ¶ 27. Thus, commercial speech is not "inextricably intertwined" with non-commercial speech. *See Fox*, 492 U.S. at 474-75.

The Court should not be persuaded by Defendant's suggestion that its website should be viewed like a digital version of the yellow pages. Defendant's website is not an alphabetical listing of names on a page. FAC, ¶¶ 37, 38. On the contrary, when a website visitor searches for and

8

Case 4:23-cv-00094-BCW   Document 26   Filed 05/23/23   Page 12 of 20

clicks on the name of healthcare provider, that provider's profile appears on a separate stand-alone page along with whatever other information that Defendant chooses to include (product advertisements, "Featured Providers," etc.). This means each piece of information can be analyzed separately for First Amendment purposes; the directory need not be viewed or analyzed as a whole.

Relatedly, it bears repeating that Plaintiffs are not challenging the directory itself or their inclusion in the directory. Plaintiffs are challenging the use of the names and standard profiles as bait to steer website visitors to Enhanced Profiles from which Defendant generates revenue. This is similar to the situation in *Camacho v. Control Group Media Co. LLC*, Case No. 21-cv-1954-MMA (MDD), 2022 WL 3093306 (S.D.Cal. July 18. 2022). In *Camacho*, the plaintiffs sued defendants for using their identities in "teasers" to entice website visitors to click a link which, once clicked, would invite visitors to subscribe to defendants' services. *Id.* at *1-*2. The defendant argued its "teasers" were non-commercial speech protected by the First Amendment because they provided visitors with a free search of biographical information and informed users what background reports that defendant had available. *Id.* at *19. The court disagreed and found the "teasers" were commercial speech. *Id.* The court reasoned,

> Plaintiffs are not challenging the reports on the Website. Instead, Plaintiffs' name, identifying information, and likeness is alleged to be used by Defendants for the purpose of enticing users into subscribing to Defendants' services. *Plaintiffs are* not challenging the use of their likeness on the entire Website itself, but rather they seek to prevent use of their likeness in conjunction with advertisements for Defendants' services. Compl. ¶¶ 2, 28; Doc. No. 23 at 28 ("Plaintiffs challenge the use of their identifying information in Defendants' advertising for those subscriptions—not the inclusion of their information in a directory."). This is commercial speech.

*Id*.

Similarly, in *Boshears v. PeopleConnect, Inc.*, Case No. C21-1222 MJP, 2022 WL 888300 (W.D. Wash. March 25, 2022), the plaintiff sued defendant for using his name and photograph to entice website visitors to click a link which, once clicked, would invite visitors to subscribe to sign

9

up for a free account. *Id.* at *1. Visitors who signed up for free accounts would then be directed to a separate screen and offered access to various paid subscriptions. *Id.* The defendant argued that plaintiff was attacking "dissemination of yearbook excerpts on a free, publicly available database" and not commercial speech. *Id.* at *10. The court disagreed, reasoning:

> [W]hat Boshears seeks to stop is Classmates use of his likeness to advertise its subscription services that allows user to connect and interact and access full resolution copies of the yearbooks. The advertisements at issue that Classmates created are not intertwined with otherwise protected speech. And the mere fact that Boshears' photos do not appear on the screens offering the sale of the subscription is not dispositive. As alleged, a user is offered the subscription service after clicking on Boshears' image or a user is offered the subscription on the page displaying Boshears' image. (FAC ¶¶ 32, 35.)

*Id.*; *see also Krause v. RocketReach LLC*, 561 F.Supp.3d 778, 784 (N.D. Ill. 2021)(finding commercial speech where defendant used plaintiff's name to entice website visitors to click on a hyperlink that offers phone plans for sale).

To be sure, as Defendant points out in its moving papers, the United States District Court for the Northern District of Illinois court reached a different result in *Vdolyak v. Avvo, Inc.*, 206 F. Supp.3d 1384 (N.D. Ill. 2016). The *Vdolyak* court found that a digital directory of legal professionals was akin to the yellow pages and entitled to First Amendment Protection as non-commercial speech. *Id.* at 1388. But the *Vrdolyak* court ignored the facts of the case before it as well as the teaching of *Fox*, *supra*. Rather than scrutinizing the specific conduct the plaintiff was challenging—linking competitors' advertisements to his profile—the court treated plaintiff's lawsuit as a challenge to the directory itself. It examined whether the website *as a whole* was commercial or non-commercial speech, and did not separately examine whether the *component parts* of the website (e.g., the advertisements, the director entries, etc.) were commercial or non-commercial speech, or whether the commercial aspects of the website could be severed from the

non-commercial aspects of the website. *See Fox*, 492 U.S. at 474-75. Had it done so, as it was required to do under *Fox*, it likely would have reached a different result.[2]

Furthermore, *Vrdolyak* is factually distinguishable from the instant case. The only way Defendant can try and make this applicable here is to mischaracterize Plaintiffs' profile webpages as only containing a "claim your free profile" link. As previously discussed, Plaintiffs' profiles contain much more than "only one link" that allows the provider to claim their profile. *See* Exhibit 1. There are several other links, specifically selected by Defendant based upon Plaintiffs' profiles, practice areas and clientele and specifically designed to intercept Plaintiffs' clientele and drive them to other providers for Defendant's commercial gain. Exhibit 1; FAC ¶¶ 20-37. Defendant's mischaracterization of Plaintiffs' profiles should be rejected, and even the most liberal reading of *Vrdolyak* would not allow it to be expanded to protect the conduct that Plaintiffs allege in this case.

**B.      Dr. Sweeton's Claims Are Not Barred by Kansas' Two-Year Statute of Limitations**

Defendant argues Dr. Sweeton's claims are subject to Kansas' two-year statute of limitations and therefore Dr. Sweeton cannot seek relief for any injury occurring prior to December 21, 2020. Even assuming this were true, it would not support dismissal of Dr. Sweeton's claims. On the contrary, Dr. Sweeton still would remain entitled to seek relief related to post-December 21, 2020 conduct. To the extent Kansas' two-year statute of limitations period might prevent Dr.

---

[2] The *Vrdolyak* court got it wrong for another reason as well. The purported preclusive effect of the First Amended Complaint is an affirmative defense that ordinarily cannot be resolved at the pleadings stage. *See, e.g, Daniels v. FanDuel, Inc.*, Case No. 1:16-cv-01230-TWP-DKL, 2017 WL 4340329, at *11 (S.D. Ind. Sept. 29, 2017)(denying motion to dismiss because "the Court does not have the proper factual and evidentiary basis to …make the threshold determination as to whether the speech at issue should be properly characterized as commercial or non-commercial); *Siegel v. Zoominfo Technologies, LLC*, 21 C 2032, 2021 WL 4306148, at * (N.D. Ill. Sept. 22, 2021)(denying motion to dismiss because "consideration of this [First Amendment] defense requires an analysis of evidence and issues that is not possible or appropriate at the motion to dismiss stage."); *cf. Browne v. Avvo Inc.*, 525 F. Supp.2d 1249 (W.D. Wash. 2007)(granting motion to dismiss where plaintiff challenged accuracy and validity of numerical rating system that was "absolutely protected" by the First Amendment).

Sweeton from representing a class defined to encompass the time period December 21, 2017 through the present, that is more properly considered at the class certification stage.

More fundamentally, dismissal is inappropriate because the running of the statute of limitations cannot be determined from the face of the complaint, since the complaint does not show when Dr. Sweeton's cause of action accrued. In Kansas, a cause of action accrues either (a) when the act giving rise to the cause of action first causes substantial injury; or (b) where plaintiff's injury is not reasonably ascertainable until sometime after the initial act, then when the injury becomes reasonably ascertainable. *Dearborn Animal Clinic, P.A. v. Wilson*, 248 Kan. 257, 264-65 (1991). Nowhere does the First Amended Complaint reveal when Dr. Sweeton was first injured by Defendant's wrongful conduct. The most that can be said is her name appeared on Defendant's website sometime "during" the time period December 21, 2017 through April 11, 2023. *First Amended Complaint*, ¶ 41. That is not enough to allow this Court to dispose of this matter on the pleadings. *See Bishop v. DeLaval Inc.*, 466 F. Supp.3d 1016 (W.D. Mo. 2020)("A court may consider a statute of limitations argument at the motion to dismiss stage only if it appears from the face of the complaint that the limitations period has run and the complaint contains no facts to toll that running.").

C.  **Dr. Sweeton States An Invasion of Privacy Claim Under Kansas Law**

Defendant argues Dr. Sweeton cannot seek recovery for the mere incidental use of her name. This is beside the point. Dr. Sweeton does not seek recovery for the mere incidental use of her name. Defendant seeks recovery because Defendant used her name as bait to attract visitors to its website and steer them to specifically selected, competing healthcare providers and to advertisements for healthcare products. FAC, ¶¶ 20-26. This conduct is actionable under Kansas law. *Dry v. Boeing Co*, No. 99-1402-WEB, 2002 WL 31730924 (D. Kan. Sept. 3, 2002). As

Senior District Judge Brown observed in *Dry*, "Although a person does not have a right to object merely because his likeness is brought before the public, the right to privacy is invaded 'when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with ... the likeness....' Restatement (Second) of Torts § 652C comment d. The right to privacy does not extend only to celebrities or public figures; it applies to ordinary individuals as well." *Id.* at *2 (holding that a reasonable jury could find plaintiff's likeness had commercial value and had been exploited by the defendant); *see also Thornton v. Western & Southern Financial Group Beneflex Plan*, 797 F. Supp.2d 796 (W.D. Kentucky 2011)(citing Restatement (Second) of Torts, § 652C and holding that reasonable jury could find plaintiff's name and likeness had commercial value to defendant's customers even though plaintiff was not a celebrity); *Batis v. Dun & Bradstreet Holdings, Inc.*, Case No. 22-cv-01924-MMC, 2023 WL 1870057, at *3 (N.D. Cal. Feb. 9, 2023) ("[T]he appropriation of the identity of a relatively unknown person … may itself create economic value in what was previously valueless.").

## D. <u>Kansas Recognizes a Right of Publicity Tort</u>

Defendant argues Dr. Sweeton cannot seek recovery for the right of publicity because Kansas does not recognize the tort. This argument is without merit. The right of publicity tort falls under the broad umbrella of unfair competition. *See Doe v. TCI Cablevision*, 110 S.W.3d 363, 369 (Mo. banc 2003)(discussing the tort and citing Restatement (Third) of Unfair Competition). Kansas clearly recognizes a cause of action for unfair competition, and federal courts in the District of Kansas have predicted Kansas would adopt the Restatement formulation of this claim. *Assessment Technologies Institute LLC v. Parkes*, 588 F. Supp.3d 1178, 1222 (D. Kan. 2022)(citing cases); *Progressive Prods., Inc. v. Swartz,* 292 Kan. 947, 960 (Kan. 2011) (citing the Restatement). Section 1 of the Restatement defines unfair competition to include

"appropriation of intangible trade values including trade secrets and the ***right of publicity*** as specified in Chapter Four." Restatement (Third) of Unfair Competition, § 1 (1995) (emphasis added). Chapter Four provides in pertinent part: "***One who appropriates the commercial value of a person's identity by using without consent the person's name, likeness, or other indicia of identity for purposes of trade is subject to liability for the relief appropriate under the rules stated in §§ 48 and 49***." *Id.* § 46 (emphasis added). This is the cause of action set forth in count II of the First Amended Complaint and it is completely consistent with Kansas law.

E.  **Dr. Moss States a Claim for Invasion of Privacy Under Missouri Law**

"The tort of invasion of privacy includes four separate causes of action: intrusion on the plaintiff's seclusion or private affairs, public disclosure of embarrassing private facts, publicly placing plaintiff in a false light, and appropriation of plaintiff's name or likeness for defendant's advantage." *Nemani v. St. Louis University*, 33 S.W.3d 184, 185 (Mo. banc 2000). To establish a cause of action for name appropriation, a plaintiff must prove (1) the defendant used plaintiff's name as a symbol of his identity (2) without consent (3) and with the intent to obtain an advantage. *TCI Cablevision*, 110 S.W.3d at 368-69. Dr. Moss has alleged these elements. FAC, ¶¶ 52-57.

Defendant argues Dr. Moss cannot seek recovery for the appropriation of his name because he has not alleged his name was used as a symbol of his identity. This argument is without merit. Defendant did not choose to include the name "Dr. Jason Moss" on its website by mere happenstance. Defendant chose to include the name "Dr. Jason Moss" on its website because Dr. Moss is a licensed healthcare provider for whom prospective patients would search. Defendant's goal is to intercept prospective patients searching for Dr. Moss and to steer them to competing providers who have paid for Enhanced Profiles. FAC, ¶¶ 20-24, 37, 39, 53 & 58. Defendant also seeks to steer prospective patients searching for Dr. Moss to healthcare products they might need.

14

FAC, ¶¶ 37, 39, 56.  Defendant could not accomplish these objectives using some random name, rather than the name of a licensed healthcare provider.  Dr. Moss has alleged sufficient facts to state a claim for name appropriation under Missouri law.

F.  **Dr. Moss States a Right of Publicity Claim Under Missouri Law**

To establish the right-of-publicity tort, the plaintiff must plead and prove (1) that the defendant used plaintiff's name as a symbol of his identity (2) without consent (3) and with the intent to obtain a commercial advantage.  *TCI Cablevision*, 110 S.W.3d at 368-69.  Dr. Moss has properly alleged each of these elements.  FAC, ¶¶ 63-68.  Nothing else is required to properly state a claim for violating Plaintiff's right of publicity.  *See TCI Cablevision*, 110 S.W.3d at 368-69.

Defendant argues Dr. Moss cannot seek recovery for the right of publicity because he has not alleged Defendant appropriated any commercial value in his public persona.  This argument is without merit.  Dr. Moss's public persona is that of a licensed healthcare provider. *See* FAC, ¶¶ 3, 63, 65, 67.  His public persona has commercial value because prospective patients search for him when seeking chiropractic treatment.  *See* FAC, ¶¶ 3, 21, 22, 23, 28.  Defendant's business model involves intercepting those patients and steering them to the Enhanced Profiles of competing providers and to product advertisements. *See* FAC, ¶¶ 20, 37, 58.  This is sufficient to state a claim for right of publicity under Missouri law.  *See TCI Cablevision*, 110 S.W.3d at 368-69 (articulating the elements of the claim); *see also* Restatement (Third) of Unfair Competition, § 46, Comment b (1995)("The right of publicity protects the commercial value of a person's identity….[and] the identity of even an unknown person may possess commercial value.").

15
Case 4:23-cv-00094-BCW   Document 26   Filed 05/23/23   Page 19 of 20

Respectfully Submitted,

BARTLE & MARCUS LLC

By /s/ David L. Marcus
   David L. Marcus, MO Bar #47846
   BARTLE & MARCUS LLC
   4700 Belleview Ave., Suite 200
   Kansas City, MO 64112
   Telephone: 816.256.4699
   Fax: 816.222.0534
   Dmarcus@bmlawkc.com

WHITE, GRAHAM, BUCKLEY & CARR, L.L.C
   Bryan T. White MO Bar #58805
   19049 East Valley View Parkway
   Independence, Missouri 64055
   Telephone: 816.373.9080
   Fax: 816.373.9319
   Bwhite@wagblaw.com

CLAYTON JONES, ATTORNEY AT LAW
   Clayton Jones, MO Bar #51802
   405 Foxwood Drive
   Raymore, MO 64083
   Telephone: 816.318.4266
   Fax: 816.318.4267
   clayton@claytonjoneslaw.com

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on May 23, 2023, the foregoing was served via this Court's e-filing system on all counsel of record.

   /s/ David L. Marcus
   *Attorney for Plaintiff*